**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Darrell L. BAILEY, Defendant–Appellant.**

**No. 90–3818.**

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1991.

Decided March 3, 1992.

Barry R. Elden, Asst. U.S. Atty., Ronald D. May (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

William J. Stevens, Chicago, Ill. (argued), for defendant-appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Darrell L. Bailey was convicted of one count of bank robbery, using a dangerous weapon, 18 U.S.C. § 2113(d), two counts of knowingly possessing an interstate firearm after having been convicted of a felony, 18

U.S.C. § 922(g)(1), and one count of using a firearm in the commission of a crime of violence, 18 U.S.C. § 924(c). Bailey was sentenced to 35 years of imprisonment.

## BACKGROUND

Bailey was convicted of robbing the First Security Bank of Chicago on January 4, 1990. At about that date, the FBI Chicago Office learned that Bailey was wanted for three recent California bank robberies, and that he was now in Chicago, possibly at the home of his brother. Agents thought him a likely prospect for the First Security robbery and set up surveillance of his brother's apartment on January 5, and discovered Bailey was inside and armed. They persuaded Bailey to throw his weapons and ammunition out the apartment window. One of the two guns Bailey threw out was the gun which had been taken from the guard at the robbery of First Security the day before. The agents then arrested Bailey and found over $7,000 in cash in his pockets.

Bailey made a statement in which he admitted that he had robbed the First Security Bank of Chicago, and that he had committed three bank robberies in California in December, 1989. At the trial in this case his statement was redacted so that description of two California robberies was omitted. The remaining one was very similar to the First Security robbery. In both, Bailey made the people in the bank get down on the floor and gave a teller a bag to fill with money. He then told the tellers they had ten seconds to fill the bag and counted aloud from ten down. Bailey also said he used the same gun in both robberies. An information was filed, and Bailey waived indictment. He requested that he be transferred to California. He represented that in California he would plead guilty to the Chicago charge, pursuant to Rule 20 of the Federal Rules of Criminal Procedure. Bailey was transferred to California in March, but then decided not to plead guilty. Prosecution was commenced in the Northern District of California for the three California bank robberies. Bailey moved in that court to suppress his Chicago statement, alleging failure to warn of Miranda rights, and that he had asked for counsel. The United States Attorney's Office in Northern California failed to respond, and the court granted Bailey's motion on account of default on June 11. On June 25, the court orally refused to reconsider its default ruling, denied a continuance, and granted the government's motion to dismiss, without prejudice. The district court issued its written order on July 16. On June 22, the Northern District of Illinois had issued a bench warrant, and after the case was dismissed in California, Bailey was transported to Illinois. Bailey arrived in Chicago on or about July 23. Trial began on August 13.

## DISCUSSION

Bailey has presented three issues on appeal: (1) whether the portion of his FBI statement recounting the robbery of one California bank was admitted in violation of Rule 404(b); (2) whether the suppression of his statement by the district court in California was *res judicata;* and (3) whether his Chicago trial was timely under the Speedy Trial Act.

### I

The government offered and the court admitted in evidence Bailey's redacted statement to the FBI. In one unredacted portion, he told how he robbed a bank in Oakland, California a few days before Christmas, 1989. Continuing, he told of his return to Chicago and his robbery of First Security on January 4, 1990. The government's theory for offering the description of the Oakland robbery was that it tended to prove Bailey's identity as the Chicago robber because the two robberies were distinctively similar. Bailey said, "I put everyone on the floor, gave the teller a plastic bag, and told her she had ten seconds to fill it with money.... I counted down the ten seconds out loud to the tellers for intimidation."

The witnesses to the First Security robbery described a similar procedure. The judge instructed the jury that evidence concerning the earlier robbery could be con-

sidered "only on the question of the defendant's identity or his *modus operandi* or his method of operation." Rule 404(b), Rules of Evidence, permits admission of evidence of other crimes for such purposes.

Bailey argues that the district judge failed to record any exercise of discretion in permitting the description of the California bank robbery to remain in Bailey's statement to the FBI when the statement was admitted in evidence. Rule 404(b) prohibits evidence of other crimes, wrongs, or acts in order to show a propensity towards crime, but allows admission "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b) is usually paired with Rule 403, which says, "Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

■ In *United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir.1987), this court explained the procedure for using Rules 404(b) and 403:

> The district judge must both identify the exception [under Rule 404(b)] that applies to the evidence in question and evaluate [under Rule 403] whether the evidence, although relevant and within the exception, is sufficiently probative to make tolerable the risk that jurors will act on the basis of emotion or an inference via the blackening of the defendant's character.

In Bailey's case, the district judge did not comply with *Beasley*. He agreed that the evidence concerning the previous robbery could not come in to show propensity, but he did not address in any way a comparison of its probative value and danger of unfair prejudice.

There is an exception to this rule when the evidence is transparently admissible, *Beasley*, 809 F.2d at 1280, but that is not true of the evidence in this case. Although it satisfies the criteria for Rule 404(b) because it tends to prove Bailey's identity, in that the two robberies are remarkably similar, and is evidence that the California

robbery actually occurred, it does not clearly satisfy Rule 403.

There is an obvious peculiarity about this case for the purposes of Rules 404(b) and 403. The portion of Bailey's statement which is evidence of another crime is part of a statement in which he confesses the offense for which he was on trial. The record suggests no reason why the jury could have believed Bailey's confession of the California robbery without also believing his confession of the Chicago robbery. Under the circumstances, the probative value of the former was slight. For the same reason, the danger of unfair prejudice was probably minimal.

On the record as a whole, moreover, any error was harmless. Error is harmless if we can say "the judgment was not substantially swayed by the error." *United States v. Shackleford*, 738 F.2d 776, 783 (7th Cir. 1984) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946). The government's evidence was strong enough that the verdict would almost certainly have been the same if the statement concerning the California robbery had been omitted. In addition to Bailey's detailed confession of the Chicago robbery, the government produced evidence that a gun which Bailey dropped from a window just before he was arrested was taken from the security guard at the bank in the course of the robbery, and that Bailey had over $7,000 in cash in his possession at the time of his arrest. The government also presented the testimony of three eyewitnesses who identified Bailey at trial. Other witnesses provided details of the robbery that showed Bailey's description of the robbery was accurate. FBI agents described the conditions surrounding Bailey's confession to show it was not coerced. They testified that Miranda warnings were given and that Bailey waived his rights without requesting counsel. None of the testimony was significantly called into doubt on cross-examination, and Bailey's defense consisted entirely of showing the jury that he had a scar on his face which none of the eyewitnesses had included in the description of the bank robber which they gave to the FBI. Two referenc-

es to the California episode in the government closing argument were brief, casual, and clearly not prejudicial.

## II

■ Bailey's second argument is that the suppression of his statement by the California court was *res judicata.* The issue of suppression was decided in a criminal action in which the United States was plaintiff and Bailey was defendant. The parties were identical in California and Chicago. The causes of action were not. The California case involved three robberies of banks in California. The case we have under review involved a different robbery of a different bank. For *res judicata* to apply, the causes of action as well as the parties, or their privies, must be identical. *Gray v. Lacke,* 885 F.2d 399, 405 (7th Cir. 1989), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Collateral estoppel (or issue preclusion) is the appropriate doctrine when different causes of action are involved, but collateral estoppel does not preclude a party from litigating an issue which was not actually litigated. When a motion is granted, as here, because of another party's default, the issue is not litigated. *Grip–Pak, Inc. v. Illinois Tool Works, Inc.,* 694 F.2d 466, 469 (7th Cir. 1982), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983); Restatement (Second) of Judgments § 27 comment e. We note also that the California district judge seems to have limited the effect of his decision to the case before him, probably because it was decided on default. His order provided: "All items requested to be suppressed are hereby excluded from evidence *at any trial in this case....* " (Emphasis supplied.)

## III

■ Bailey's final argument is that under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.,* his case should have been dismissed. The Speedy Trial Act requires that a trial start

within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

In this case, the information was filed February 1, and because defendant had previously appeared before a magistrate judge, the government concedes the speedy trial clock started February 1, 1990. *See United States v. Owokoniran,* 840 F.2d 373, 374 (7th Cir.1987). Defendant has argued as if it started on February 7. The trial started August 13, 1990. On account of delay resulting from the California proceedings, Judge Plunkett, to whom the case was originally assigned, entered orders excluding time from March 6 through May 15, and from June 6 through August 1. We do not know why there was no order excluding time for the same reason from May 15 through June 5, but counting only the specifically ordered exclusions, the trial started within 70 days from February 1. On motion just before trial, Judge Parsons, the trial judge, computed the elapsed time at 68 days. On appeal, the government argues for 64 days, and the defendant argues for 76 days, counting from February 7.

Bailey does not contest excluding March 6 through May 15 or June 6 through June 25. He also impliedly admits, as he must, the relevant facts not having changed, that May 15 through June 5 must be excluded. Although the government and the district court cite several subparagraphs to justify exclusion, the case is covered by § 3161(h)(1)(D), which requires exclusion for "Any period of delay resulting from other proceedings concerning the defendant, including but not limited to— ... (D) delay resulting from trial with respect to other charges against the defendant." Soon after the information was filed, Bailey requested that he be sent to California to face charges there. In early March,[1]

---

1. The first order excluding time made the exclusion begin on March 6. Bailey did not leave Chicago until about March 12. We think the

court could properly find that delay resulting from the California proceeding began March 6, and the defendant does not contest that. The

Bailey left for California. The exclusion in § 3161(h)(1)(D) is automatic, *Henderson v. United States*, 476 U.S. 321, 327, 106 S.Ct. 1871, 1875, 90 L.Ed.2d 299 (1986), and includes preparation for trial regardless of whether a trial actually occurs, *United States v. Montoya*, 827 F.2d 143, 149–50 (7th Cir.1987), so all the time Bailey spent in being transferred to California and in facing charges there is excluded.

The issue before us is when delay resulting from trial on the California charges ended. Bailey argues that § 3161(h)(1)(D) did not apply after June 25 because on June 25, the court in the Northern District of California dismissed the California charges. The government argues that the delay resulting from trial in California did not end on June 25 because on June 25, the court issued only an oral order and the case cannot be deemed to be finally resolved until July 16 when the court issued its written order. We agree with the government because there was no judgment until July 16. Rule 32(b)(1) of the Federal Rules of Criminal Procedure explains, "If the defendant is found not guilty or for any other reason is entitled to be discharged, judgment shall be entered accordingly. The judgment shall be signed by the judge and entered by the clerk." *See also Bates v. Johnson*, 901 F.2d 1424, 1428 (7th Cir.1990) ("statement in court 'is not itself an order to act or desist' "); *United States v. Green*, 779 F.2d 1313, 1321 (7th Cir.1985) (oral statement that court would deny defendant's motions did not stop Speedy Trial Act exclusion from running until date of written order). Although the district court in the Northern District of Illinois issued a bench warrant June 22, it would be unreasonable to expect the marshals to execute it and transport Bailey until there was a judgment or order of dismissal entered in the California court.

■ Thus, all the time from March 6 until July 16 (and perhaps until July 23) was properly excluded under § 3161(h)(1)(D). The time from July 16 un-

til July 23 when Bailey was returned to Illinois should be also excluded under § 3161(h)(1)(D), which excludes "delay resulting from transportation of any defendant from another district." Giving effect to these exclusions, the trial started within 70 days from February 1, 1990.

We note the government's argument that the period until August 1 is to be excluded because of Judge Plunkett's order of June 18 (consented to by defense counsel), excluding time between June 6 and August 1, 1990, based on an estimate by the United States Attorney in California that the proceeding in California would not be completed before then. We need not reach this question.

The judgment of the district court is AFFIRMED.

---

government has suggested that the exclusion could have begun February 6 when the defendant informed the court of his desire to have all the charges disposed of in California. We rest our decision, however, on the beginning date of March 6.